UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MERRY CLARK, on behalf of and as next friend of A.C., Minor, and S.C., Minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:05-cv-0822-JDT-TAB |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 8, 10)**[1]

This cause comes before the court on the cross-motions for summary judgment filed by the Defendant and the Plaintiff regarding the Plaintiff's right to payment under an underinsured motorist provision within her policy of insurance issued by the Defendant. The court rules as follows:

**I.   Material Facts Not in Dispute**

The following material facts are not in dispute. On or about December 24, 2003, Plaintiff, Merry Clark, her then husband, Robert Clark, and their minor children, A.C. and S.C., were involved in a motor vehicle collision in Crawfordsville, Montgomery County, Indiana, which resulted in personal injuries to all of them. At the time of the accident, the Clarks were occupying an automobile owned by Jerald Day and Martha Day that

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

was insured under an automobile insurance policy issued by Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), Policy No. 34 5021-A03-14 (the "State Farm Policy" or "Policy"). The accident in question is alleged to have been caused by the negligence of Billy Akers, who died from injuries sustained in the accident. At the time of the accident Akers was insured under an automobile liability insurance policy issued by American Family Mutual Insurance Company ("American Family").

Prior to March 2005 American Family settled the claims of Merry Clark and Robert Clark for payment of $100,000 each, leaving $100,000 to resolve the claims of the minor Clark children. On March 10, 2005, with the consent of State Farm, the Plaintiff, on behalf of A.C. and S.C., accepted the remaining liability policy limits of American Family's policy in settlement of A.C.'s and S.C.'s claims against the Estate of Billy Akers. Pursuant to the settlement terms, A.C. received $75,000 and S.C. received $25,000.

Plaintiff then asserted a claim on behalf of A.C. and S.C. for underinsured motorist benefits under the State Farm Policy. The Policy provides underinsured motorist ("UIM") coverage with limits of $100,000 per person and $300,000 per accident. Pursuant to the UIM coverage contained in the Policy, State Farm agreed that:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. Bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an underinsured motor vehicle.

2

(Policy 13.)  The Policy defines "underinsured motor vehicle" as follows:

> ***Underinsured Motor Vehicle*** – means a land motor vehicle:
>   1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
>   2. whose limits of liability for bodily injury liability:
>       a. are less than the limits you carry for underinsured motor vehicle coverage under this policy; or
>       b. have been reduced by payments to persons other than the insured to less than the limits you carry for underinsured motor vehicle coverage under this policy.

(*Id.*)  The Limits of Liability provision of the UIM coverage provides in relevant part that:

> Limits of Liability – Coverage W
> 1. The amount of coverage is shown on the declarations page under "Limits of Liability – W – Each Person, Each Accident". Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to others resulting from this bodily injury. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to bodily injury to two or more persons in the same accident.
> . . .
>
> 5. The most we pay any one insured is the lesser of:
>    a. the difference between the "each person" limit of this coverage and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury; or
>    b. the difference between the amount of the insured's damages for bodily injury and the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury.
>
> Subject to 5.a. and 5.b. above, the maximum amount payable to all insureds under this coverage is the difference between the "each accident" limit of liability of this coverage and the amount paid all insureds by or for any person or organization who is or may be held legally liable for the bodily injury.

(Policy 15.)

## II.     Discussion

The parties filed cross-motions for summary judgment. Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The parties are citizens of different states and the jurisdictional amount is satisfied; thus, this court has diversity jurisdiction over this action. 28 U.S.C. § 1332. The court therefore applies the substantive law of the forum state, Indiana. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The court's task is to apply the law of Indiana as it believes the Indiana Supreme Court would if faced with the same issue presented here. *Wolverine Mut. Ins. v. Vance ex rel. Tinsley*, 325 F.3d 939, 942 (7th Cir. 2003); *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). State Farm contends that under clear Indiana precedent, the vehicle operated by Akers was not an underinsured motor vehicle and, therefore, its policy provides no UIM coverage for the Plaintiff's claims in this action. It also argues that even if the Akers vehicle was an underinsured motor vehicle, the $300,000 payment to the Clarks has reduced the available UIM limits of liability coverage to zero dollars. And, finally, State Farm further contends that it is entitled to summary judgment on the bad faith claim because its denial of coverage is supported by a good faith legal argument.

**A. Plaintiff's Claim Under State Farm's UIM Provision**

State Farm's first argument is correct. In *Corr v. American Family Insurance*, 767 N.E.2d 535 (Ind. 2002), the Indiana Supreme Court held that "a vehicle is an 'underinsured motor vehicle' pursuant to Indiana Code section 27-7-5-4(b) if the amount actually available for payment to the insured from the tortfeasor's bodily injury liability policies is less than the policy limits of the insured's underinsured motorist coverage." *Id.* at 536.[2] This holding, however, does not answer the question of which policy limits are to be compared to determine whether a tortfeasor's vehicle is underinsured—the per person limits or the per accident limits. The answer is dependent on the number of insureds who seek UIM coverage.

The issue was addressed first in *Allstate Insurance Co. v. Sanders*, 644 N.E.2d 884 (Ind. Ct. App. 1994). Two brothers were injured in an accident caused by Dorothy Hartgraves. Hartgraves' insurance provided coverage for bodily injury with limits of $50,000 per person and $100,000 per accident. Her insurer paid each brother $50,000 for his injuries. The brothers were insured under an Allstate policy that provided UIM coverage of $100,000. They sued Allstate seeking coverage. Allstate sought judgment, contending that Hartgraves' vehicle was not underinsured because the per accident liability limit on her policy was not less than the UIM coverage of Allstate's policy. The brothers argued that the per person liability limit applied instead. *Sanders*, 644 N.E.2d

---

[2] "Insured" in Indiana Code § 27-7-5-4(b) is used as a collective noun to denote a whole or group. *See Allstate Ins. Co. v. Sanders*, 644 N.E.2d 884, 887 n.2 (Ind. Ct. App. 1994); *Medley v. Am. Eco. Ins. Co.*, 654 N.E.2d 313, 315 (Ind. Ct. App. 1995) (recognizing the "well-settled rule of statutory construction that words used in their singular include also their plural").

at 885.  The court rejected this argument and held that when determining whether a tortfeasor's vehicle is underinsured where more than one insured is injured, the comparison is made to the tortfeasor's per accident liability limit.  *Id.* at 886-87.

In *Corr*, the Indiana Supreme Court also addressed which policy limits are to be compared in determining whether a vehicle is underinsured, but in a different situation than that presented in *Sanders*.  The *Corr* plaintiffs were insureds under an American Family Insurance ("AFI") automobile policy.  Their daughter died as a result of injuries from a car accident when she was a passenger in a van driven by Andres Balderas.  Four other occupants of the van were seriously injured as well.  Balderas' father, the van's owner, had insurance with bodily injury liability limits of $100,000 per person and $300,000 per accident.  Balderas' mother had a separate policy with a different insurer with the same limits, for an aggregate total of $200,000 and $600,000.  The two insurance companies tendered their per accident limits to the court.  After mediation, the parties agreed that each Corr would receive $57,500.  These sums were paid.  The Corrs had separate insurance policies with AFI.  They sued AFI seeking coverage under their UIM coverage provisions.  *Corr*, 767 N.E.2d at 537.  The issues considered were (1) whether the van was an underinsured motor vehicle, and (2) whether in deciding that issue the proper comparison is made between the per accident bodily injury liability limits or the per person bodily injury liability limits under the Balderas' policies and the Corrs' policies.  *Id.* at 538.

AFI argued that Indiana's underinsured motorist statute required a comparison between the per accident bodily limits.  It therefore argued that the van was not

underinsured because the aggregate limits of the Balderas' per accident coverage exceeded the limits of either Corr's per accident coverage. The Indiana Supreme Court rejected this argument, noting that the Indiana Court of Appeals had held that where more than one person is injured in an accident, the per accident liability limits control for determining whether a vehicle is underinsured. *Corr*, 767 N.E.2d at 538. The Court noted that both injured parties were insured under the same UIM policy and said that in such a situation, the per accident limits may have been relevant. They were not relevant in *Corr*, however, because the daughter was the only insured under the Corrs' UIM policies who was injured. *Id.* The Court concluded that "if a limits-to-limits comparison is to be employed, where only one insured is injured in an accident, the appropriate limits to compare to determine if a vehicle is underinsured are the per person limit of the tortfeasor's liability policy and the per person limit of the insured's UIM coverage." *Id.*

The next issue was whether to compare the Balderas per person policy limits of $200,000 or the $57,500 recovered by each Corr "to the amount of each Corr's UIM coverage" so as to determine whether the Balderas' van was underinsured. *Id.* The Court rejected a strict limits-to-limits comparison in favor of a comparison "between the amount of each Corr's UIM coverage and "the amount of the coverage limits actually 'available for payment' to each Corr from Balderas' coverage." *Corr*, 767 N.E.2d at 538-39. This result, it found, was dictated by the Indiana statute. *Id.* at 539. The Court took the word "available" in the Indiana statute in its plain, ordinary and usual sense—and found it to mean "money present or ready for immediate use by the insured, not

7


amounts potentially accessible." *Id.* at 539-40.  Under that meaning, the amount "available" was the $57,500 each Corr received, not the Balderas' policy limits.  *Id.* at 540.  The Court reasoned that its holding was consistent with the underlying purpose of UIM coverage—"to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance."  *Id.*  In other words, the purpose is to put the insured in the same position he or she would have been if the underinsured had coverage equal to the insured's UIM coverage.  *See Sanders*, 644 N.E.2d at 887.

  *Corr* did not overrule *Sanders*.  Instead, the cases addressed different situations—where only one insured under the UIM policy is injured (*Corr*) and where more than one insured under the UIM policy is injured (*Sanders*).  Both cases recognize that the essential purpose of UIM coverage is to put the insured in the same situation he or she would have been in if the tortfeasor had liability limits equal to those that the insured had under his or her UIM liability limits.  The instant case is a situation in which more than one insured under the UIM policy at issue was injured, so the court looks to *Sanders* for the appropriate liability limit comparison.  Therefore, following *Corr* and *Sanders*, to determine whether the Akers' vehicle was an underinsured vehicle under the Indiana statute, Indiana Code § 27-7-5-4(b), the court compares the limits of coverage actually available for payment to the insured from Akers' policy to the per accident policy limits of her UIM coverage.

Here, the "insured" were all four Clarks.[3]  Each of them was injured in the same accident and the per accident liability limits of Aker's policy were paid to each in varying amounts.  The per accident liability limits of the State Farm Policy, $300,000, are the same as that actually made available to the Clarks under the Akers' policy.  Because the coverage available to the Clarks under the Akers' policy was not less than the limits of the UIM coverage under the State Farm Policy, the court finds that the Akers' vehicle was not an underinsured motor vehicle within the meaning of Indiana Code § 27-7-5-4(b) or within the meaning of the Policy.  Therefore, no coverage is available to Plaintiff under the State Farm Policy.

Plaintiff asserts that she is not claiming that State Farm owes her and her family proceeds beyond the contracted for policy limits.  But that is precisely what she is doing.  The State Farm Policy has uninsured motorist liability limits of $100,000 per person/$300,000 per accident.  If Akers had no insurance, the most the Clarks could recover under the Policy would be the $300,000 per accident limit.  In seeking what would amount to a $100,000 per person limit for each of the four insured members of the Clark family, Plaintiff attempts to write the $300,000 per accident limit out of the policy.  State Farm may not offer less coverage than the law requires, but parties may contract to limit liability.  *See Corr*, 767 N.E.2d at 538.  They did so here.

---

[3] As noted, "insured" in Indiana Code § 27-7-5-4(b) is used as a collective noun to denote a whole or group.  *See Sanders*, 644 N.E.2d at 887 n.2; *Medley*, 654 N.E.2d at 315 (recognizing the "well-settled rule of statutory construction that words used in their singular include also their plural").

State Farm's Policy provides that "[t]he maximum amount payable to all insureds under this coverage is the difference between the 'each accident' limit of liability of this coverage and the amount paid all insureds by or for any person or organization who is or may be held legally liable for the bodily injury." (Policy 15.) This provision is clear and unambiguous. There can be no doubt that the maximum amount payable to *"all insureds"* is reduced by "the amount paid *all insureds*." A provision in an underinsured motorist policy that states that the "limit of liability" is to be reduced by the amounts paid by or on behalf of a party liable for the insured's bodily injury requires that the limits of the policy be reduced by amounts received by the insured from a tortfeasor's liability insurer. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 531 (Ind. 2002); *Medley*, 654 N.E.2d at 316.

The State Farm Policy had UIM liability limits of $300,000 per accident. Thus, the maximum amount payable to all insureds for all claims for bodily injury arising out of the same accident was $300,000. Under the Policy's limit of liability provision, the $300,000 maximum amount payable is to be reduced by "the amount paid all insureds by or for any person . . . who is or may be held legally liable for the bodily injury." (Policy 15.) Plaintiff mistakenly argues that *Corr* rejected limiting provisions such as this. Indeed, the Court did not discuss this or any similar language. It had no need to do so as only one insured under the American Family policies at issue was injured in the accident. Pursuant to the limits of liability provision of the State Farm Policy, the $300,000 payment by American Family to the Clarks on behalf of Akers reduces the

UIM liability limits to $0.  Therefore, the maximum limit of liability has been reached and Plaintiff has no claim for payment under the State Farm Policy.

### B. Plaintiff's Bad Faith Claim

That leaves Plaintiff's claim for bad faith.  A cause of action for breach of an insurer's duty to deal in good faith with its insured "will not arise every time an insurance claim is denied."  *Friedline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002).  "[A] good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery" for a breach of the duty of good faith.  *Id.*  Instead, to prove bad faith, a plaintiff must show by clear and convincing evidence "that the insurer had knowledge that there was no legitimate basis for denying liability."  *Id.*  State Farm's position is legally correct—the Akers vehicle was not an underinsured motor vehicle under Indiana law.  Thus it follows that Plaintiff's bad faith claim cannot survive.  *E.g.*, *id.* at 40-43.

### III.   Conclusion

Ms. Clark's Motion for Summary Judgment (Dkt. No. 10) is **DENIED** and State Farm's Motion for Summary Judgment (Dkt. No. 8) will be **GRANTED**.  An appropriate judgment will be entered separately.

ALL OF WHICH IS ENTERED this 14th day of November 2005.

_____

John Daniel Tinder, Judge
United States District Court

Copies to:

Matthew C. Boulton
Keller & Keller
matt@2keller.com

John B. Drummy
Kightlinger & Gray
jdrummy@k-glaw.com

Mark D. Gerth
Kightlinger & Gray
mgerth@k-glaw.com

Randall L. Juergensen
Keller & Keller
randy@2keller.com

Magistrate Judge Tim A. Baker